IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ADRIANNA THRASHER-SCUTT,

                                    Plaintiff,

        vs.                                          Civil Action No.
                                                     6:05-CV-0792 (LEK/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

BOND, McDONALD LAW FIRM               MARK M. McDONALD, ESQ.
91 Genesee St.
Geneva, NY 14456

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint, which was filed on June 24, 2005, named Jo Anne
B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration           Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                       SUZANNE M. HAYNES, ESQ.
                                         Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>                              REPORT AND RECOMMENDATION</u>

        Plaintiff Adrianna Thrasher-Scutt, who suffers from several

diagnosed physical and mental conditions including, *inter alia,* irritable

bowel syndrome ("IBS"), obesity, depression and post-traumatic stress

disorder ("PTSD"), has commenced this proceeding seeking judicial

review of an agency determination denying her applications for disability

insurance and supplemental security income ("SSI") benefits, pursuant to

section 205(g) of the Social Security Act (the "Act").  In support of her

challenge to the agency's denial of benefits, plaintiff argues that the

findings of the administrative law judge ("ALJ") assigned to hear and

determine the matter, upon which the denial was predicated – including to

the affect that she has engaged in substantial activity since the alleged

onset date of her disability and additionally retains the capability to

perform her past relevant work – are not supported by substantial

evidence in the record.

Having carefully reviewed the record which was before the agency in light of plaintiff's arguments, I find that the ALJ's analysis of plaintiff's circumstances was flawed, in that he failed to follow the requisite protocol for addressing her mental limitations, and further that his finding that plaintiff engaged in substantial activity following the alleged onset of her disability is not supported by substantial evidence. Accordingly, I recommend that the plaintiff's motion for judgment on the pleadings be granted, and that the Commissioner's determination of no disability be vacated.

## I.     BACKGROUND

Plaintiff was born on June 17, 1977; at the time of the hearing in this matter, she was one week shy of her twenty-seventh birthday. Administrative Transcript at pp. 61, 158, 171.[2]  Plaintiff is married, although her husband is currently incarcerated and not scheduled for release for several years, and she presently resides with a friend in a rented apartment in Auburn, New York.  AT 63, 173.  Plaintiff is six feet tall and weighs three hundred and eighty pounds, having gained

---

[2]     Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 3, filed by the Commissioner together with his answer, will be cited herein as "AT ___."

approximately one hundred and fifty pounds since graduating from high school.  AT 171, 184.  Plaintiff has completed course work at various institutions of higher learning, including in Minnesota and Oregon, equating to somewhat less than two years of college education.  AT 172.

In May of 2002, plaintiff moved by automobile to New York State from Oregon, where she had been living.  AT 175-76.  Since moving to New York plaintiff has been employed in various settings.  Plaintiff worked for a brief time at the BonTon, a retail store, but was fired from that position.  AT 175-77.  Plaintiff also worked at a local Wal-Mart, but quit that employment a short time after its commencement.  *Id.*; *see also* AT 76.  Between October of 2002 and June, 2003 plaintiff worked from home as a telemarketer, but ceased working in that capacity as a result of her employer's loss of contracts in New York.[3]  AT 64, 76, 175-76.

After working at a temporary agency where she was employed intermittently for short periods, and briefly at a Wendy's restaurant, AT 174, plaintiff became employed as a cashier in a gas station located in Auburn, New York beginning in April of 2004.  AT 173.  In that position

---

[3]      Plaintiff's employer during that period is listed as American Operator Service, Inc. of Woodland Hills, California.  AT 64, 70-71, 76.  In his decision, the ALJ characterizes plaintiff's telemarketing position as that of a "telecom (sex talk) representative."  *See* AT 27.

plaintiff earns $6 per hour, and is assigned to work between five and six hours a day for as many as thirty hours, though never for forty hours, in a given work week.  AT 174, 178.  Plaintiff's records reveal that she realized earnings of $15,462.33 in 2001; $6,682.20 in 2002; and $2,431.38 in 2003.[4]  AT 73.

In addition to experiencing obesity and a diagnosed IBS condition, plaintiff suffers from mental disorders for which she has sought treatment sporadically through various sources.  Plaintiff underwent treatment from a psychiatrist in California during her younger years, according to her hearing testimony, and was diagnosed at that time as suffering from depression and anxiety.[5]  AT 181.  Before moving from Oregon, plaintiff received assistance at a Young Woman's Christian Association ("YWCA") counseling center in Greater Portland, Oregon.  AT 180; *see also* AT 117-18.  According to a letter from Jenny McGill, an Art Therapist at that facility, plaintiff was seen there between December 28, 1998, when she was referred for therapy and anger management due to a domestic conflict with an abusive partner, and December 22, 2000.  AT 117.  In her

---

[4]     Plaintiff's records also reflect receipt of unemployment benefits of $928.00 in August of 2002, and $694.00 in the following month.  AT 64.

[5]     There were no records before the agency regarding plaintiff's California psychiatric treatment.

letter, Counselor McGill reports that plaintiff exhibited "clear symptoms" of PTSD, a condition attributed to her having experienced a childhood with an abusive father and a low self-esteem.[6] *Id.*

Beginning in 2004 plaintiff received mental health treatment at the Cayuga County Community Health Center.[7]  AT 142-50; 179.  There, the plaintiff was diagnosed as suffering from major depressive disorder, PTSD, and borderline personality disorder, and was assigned a global assessment of functioning  ("GAF") score of between fifty-five and sixty, both as a current benchmark and as a high mark over the prior year.[8]  AT 152.  Professionals at the center completed a mental impairment medical source statement reflecting that plaintiff is seriously limited in the areas of working in coordination with or proximity of others without being unduly

---

[6]     Counselor McGill's letter notes several strengths exhibited by the plaintiff, including her demonstration of "a keen sense of responsibility in her employment roles and in her college classes when enrolled . . . ."  AT 117-18.

[7]     Prior to that time plaintiff also sought assistance from the Sexual Abuse Victims Advocates Resource Center, located in Auburn, New York, qualifying for treatment at the facility based upon having suffered a sexual assault in the past.  AT 180.  Unfortunately, there are no records of that treatment currently before the court.

[8]     GAF is described as a "clinician's judgment of the individual's overall level of functioning."  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., Text Revision 2000) ("DSM-IV-TR").  A person with a score of 51-60 experiences moderate symptoms, such as flat affect, circumstantial speech, and occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as the inability to retain a job.  *Id.* at 34.

distracted, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, and dealing with normal work stress, and additionally discerned some restriction on her ability to perform at a consistent basis without an unreasonable number and length of rest periods, but found no limitations in the other listed areas reflecting mental abilities and aptitudes needed to perform unskilled work.  AT 154.

At the Commissioner's request, a consultative psychiatric examination of the plaintiff was conducted on October 25, 2002, by Dr. Kristen Barry, Ph.D.  *See* AT 119-23.  After recounting plaintiff's history, and describing her manner as cooperative yet "somewhat evasive", Dr. Barry rendered a diagnosis of depressive disorder, not otherwise specified "NOS", anxiety disorder NOS, and personality disorder NOS.  AT 122.  Dr. Barry noted, however, that while the plaintiff is in need of psychological and psychiatric treatment, she is able to follow and understand simple directions and instructions, and is capable of maintaining her attention and concentration although she appears to have difficulty in relating adequately with others and handling stressors, adding that with treatment

-7-

her condition was likely to improve.  *Id.*

In November of 2002,  Dr. M. Apacible, a non-examining state agency psychiatrist, prepared a psychiatric review technique form regarding the plaintiff, finding that her diagnosed impairments of depression, anxiety, and personality disorders NOS neither meet nor equal any of the presumptively disabling impairments listed in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, including listings 12.04, 12.06 or 12.08, and further concluding that plaintiff suffers from mild limitations in her abilities to perform the activities of daily living, and to maintain concentration, persistence or pace, as well as a moderate impact upon her ability to maintain social functioning, but with no episodes of decompensation.[9]  AT 134.

By all accounts, plaintiff's daily activities are somewhat limited, and include working, playing computer games, watching television, and listening to music.  AT 177, 121-22.  Over time, plaintiff's mental condition has been treated through a variety of medications, including a prescription

---

[9]        A corresponding mental residual functional capacity assessment, also prepared by Dr. Apacible on November 4, 2002, notes that plaintiff has no history of psychiatric hospitalization and was at the time not receiving any treatment or taking medication for her conditions.  AT 138-40.  In that assessment, Dr. Apacible recorded no marked limitations, with moderate limitations detected in certain categories including under the groupings sustained concentration and persistence, and social interaction. AT 138-39.

in 2004 for Abilify, an anti-psychotic drug to address her hallucinations, Paxil, and Effexor.  AT 103, 119, 183.  Despite having no history of psychiatric hospitalization, *see* AT 119, plaintiff claims to suffer from night terrors and fear of being closed in with large numbers of people, and to have attempted suicide on at least seven or eight occasions.  AT 182.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

On August 1, 2002 plaintiff filed applications for social security disability and SSI benefits under the Act, alleging a disability onset date of September 28, 2001.  AT 61-63, 158-59.  Those applications were denied by notices dated November 4, 2002, AT 35-38, and September 5, 2002, AT 160-66, respectively.[10]

At plaintiff's request, a hearing was conducted on June 10, 2004 before ALJ Alfred R. Tyminski to address plaintiff's application for benefits. *See* AT 167-86.  Following that hearing, ALJ Tyminski issued a decision on October 27, 2004 in which, after conducting a *de novo* review of the evidence before the agency, he concluded that plaintiff was not disabled

---

[10]    While plaintiff's application for disability insurance benefits was rejected for medical reasons, her initial request for SSI benefits was denied based upon her failure to establish financial need for such benefits.  AT 160; *see also* AT 25.  On November 16, 2002 plaintiff resubmitted a claim for SSI payments; that application was accelerated and considered during the ensuing hearing.  AT 25.

within the meaning of the Act.  AT 25-31.

In his decision, ALJ Tyminski based his finding of no disability on alternative grounds.  At step one of the sequential analysis, the ALJ found that Thrasher-Scutt had engaged in substantial gainful activity beyond her alleged disability onset date – a finding which could have suffced to end the disability inquiry.  AT 27.  The ALJ did not rest his finding of no disability on this factor alone, however, instead proceeding to the next step of the governing test.  AT 27.  After reviewing medical evidence in the record, ALJ Tyminski concluded that plaintiff's mental conditions, including her PTSD and depression, were sufficiently severe to impair her ability to perform basic work activities, but that they did not, either individually or in combination, meet or equal any of the listed, presumptively disabling conditions set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[11]  AT 28.

Before proceeding to examine whether the plaintiff is capable of returning to her past relevant work, ALJ Tyminski next reviewed the available medical records for the purpose of determining her residual functional capacity ("RFC").  AT 28.  After discussing the relevant

---

[11]     The ALJ did not discern the existence of any physical condition of sufficient severity to satisfy the controlling test.  AT 29.

evidence, the ALJ noted his conclusion that plaintiff does not suffer from any impairment which would present a limitation upon her ability to perform the full range of physical demands associated with her past work, and that her medical records did not reveal the existence of any longstanding disabling mental impairment significantly limiting her ability to function in the workplace.  AT 29.  After addressing but rejecting plaintiff's subjective complaints of work-related limitations, as being neither fully credible nor consistent with available medical evidence, AT 29, ALJ Tyminski concluded that plaintiff is able to return to her past relevant work, as evidenced by the fact that she has been employed in various settings in recent times, including since the filing of her application for benefits.  *Id.* ALJ Tyminski therefore found that plaintiff is not disabled within the meaning of the Act, and thus not entitled to Social Security benefits.  AT 30.

The ALJ's opinion became a final determination of the agency when, on May 26, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 4-6.

B.    This Action

Plaintiff commenced this action on June 24, 2005.  Dkt. No. 1.  Issue

was thereafter joined by the Commissioner's filing on October 7, 2005 of

an answer, accompanied by an administrative transcript of proceedings

and evidence before the agency.  Dkt. Nos. 2,3.  With the filing of plaintiff's

brief on November 8, 2005, Dkt. No. 4, and that on behalf of the

Commissioner on December 20, 2005, Dkt. No. 5, the matter is now ripe

for determination, and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[12]  *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

   A.   <u>Scope of Review</u>

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

---

[12]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on
September 19, 2001.  Under that General Order an action such as this is considered
procedurally, once issue has been joined, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.
*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d
at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's
findings are supported by substantial evidence, a reviewing court
considers the whole record, examining the evidence from both sides,
because an analysis of the substantiality of the evidence must also include
that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing
*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464
(1951)).

When a reviewing court concludes that incorrect legal standards
have been applied, and/or that substantial evidence does not support the
agency's determination, the agency's decision should be reversed.  42
U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the
court may remand the matter to the Commissioner under sentence four of
42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to
develop a full and fair record or to explain his or her reasoning.  *Martone*,
70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.
1980)).  A remand pursuant to sentence six of section 405(g) is warranted
if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

      B.     <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>The Evidence In This Case</u>

        1.    <u>Substantial Gainful Employment</u>

As a fundamental, threshold matter, an applicant seeking disability insurance or SSI benefits under the Act must demonstrate the

> inability to engage in any substantial gainful activity
> by reason of any medically determinable, physical
> impairment which can be expected to result in
> death or which has lasted or can be expected to

> last for a continuous period of not less than 12
> months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1520(b),

416.920(b); *see also Quinones v. Barnhart*, No. 05 Civ. 579, 2006 WL

2136245, at *4 (S.D.N.Y. Aug. 1, 2006); *Saviano v. Chater*, 956 F. Supp.

1061, 1068 (E.D.N.Y. 1997).  Substantial gainful activity is defined to

include substantial work activity, which involves doing significant physical

or mental activities, even if done on a part-time basis, as well as gainful

work activity, which is performed for pay or profit whether or not a profit is

actually realized.  20 C.F.R. §§ 404.1572, 416.972; *see also Melville v.*

*Apfel*, 198 F.3d 45, 53 (2d Cir. 1999).  The adjudicative criteria for

discerning whether a claimant has performed substantial gainful activity

are delineated in sections 404.1571-404.1575 and 416.971-416.975 of the

regulations.  *Melville*, 198 F.3d at 53 (citing SSR 82-62).  The analysis of

whether a particular claimant has engaged in substantial gainful activity is

informed by several factors, including 1) the nature of the work, 2) how

well the claimant performs, 3) if the work is done under special conditions,

4) if the claimant is self-employed, 5) the time spent in work and 6) the

claimant's earnings.  *See* 20 C.F.R. §§ 404.1573, 416.973; 20 C.F.R. §§

404. 1574, 416.974; *see also Melville*, 198 F.3d at 53.  The burden of

-18-

establishing an inability to engage in substantial activity by reason of mental or physical impairment rests squarely with the claimant.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

In order to aid in the substantial gainful activity analysis, the agency has adopted regulations setting forth in monetary terms a monthly earnings amount which is generally presumed to reflect substantial gainful activity.  *See* 20 C.F.R. §§ 404.1574, 416.974.  For years beginning in 2001, the amount of average monthly earnings which will give rise to such a presumption is $740, adjusted pursuant to a formula which looks to the national average wage index for the prior two calendar years.  *See* SSA Program Operations Manual System ("POMS") DI 10501.015.  For the year 2002, the threshold minimum average monthly earnings sufficient to trigger the presumption of substantial gainful activity was $780.  *See id.*

In his decision, ALJ Tyminski analyzed plaintiff's earnings and the arguments of her counsel, concluding based upon her earnings that she was presumptively engaged in substantial gainful activity during 2001 and 2002, and that the plaintiff had failed to rebut that presumption.  *See* AT 27.  The ALJ's decision, however – particularly as it relates to the year 2001 – is potentially flawed.  As plaintiff argues, it is difficult to discern

-19-

what portion of her $15,462.33 of income reported in 2001 was earned after her September 28, 2001 disability onset date.

The application of the regulatory substantial gainful employment calculus is even more muddled with regard to 2002.  In that year, during which plaintiff had total reported earnings of $6,862.20, it appears that she may have been engaged in substantial gainful employment between February 20, 2002 and May 3, 2002, based upon the information contained within her disability report revealing that during that period she typically worked eight hours per day in a five day work week, earning $8.00 per hour, or a total gross amount of $320 per week.  *See* AT 76.  While this alone may well have satisfied the governing criteria, as plaintiff notes, this period could also be considered as an unsuccessful work attempt which should not count when determining whether she meets the regulatory substantial gainful employment threshold.[13]  *See* 20 C.F.R. §§

---

[13]     Plaintiff argues that the ALJ erred in failing to distinguish between earnings and unemployment payments.  Unemployment payments, however, may be considered as earnings for substantial gainful employment purposes, or at the least, where a claimant must certify that he or she is ready, willing, and able to work, may be an indication that the claimant does not regard himself or herself as totally disabled.  *See Timar v. Sullivan*, Civ. A. No. 90-3984, 1991 WL 149861, at *8 (D. N.J. July 26, 1991) (finding the ALJ's determination that plaintiff remained capable of substantial gainful activity was supported by substantial evidence through the time he received unemployment benefits); *see also Hartnett v. Heckler*, 625 F. Supp. 1405, 1410-11 (N.D. Ill. Jan. 3, 1986) (finding that ALJ appropriately relied on unemployment application evidence and receipt of benefits as evidence demonstrating that plaintiff's

404.1574(a)(1), 416.974.  While plaintiff also testified that she resumed gainful employment in October of 2002, engaging in work from her home, the record does not plainly reflect the earnings associated with that endeavor.

Similar problems arise in connection with plaintiff's earnings in 2003. While plaintiff recorded earnings of $2,431.38 during that time period, the record is at best sketchy concerning the period of time over which that amount was earned.  That year, then, cannot serve to support a finding of substantial gainful activity, at least based upon the current state of the record.

According to her hearing testimony, Thrasher-Scutt now works between four and five days per week and in shifts of between five and six hours each.[14]  At the assigned rate of $6.00 per hour plaintiff would therefore be earning anywhere between $480 and $720 per month.  The substantial gainful activity presumption threshold for year 2004, by contrast, was $800.  SSA POMS DI 10501.015.  It thus appears, based upon the current state of the record, that plaintiff's present employment

---

complaints of pain were not consistent with her daily activities).

[14]  It should be noted that work activity may be substantial, even though it is done on a part-time basis.  20 C.F.R. § 404.1572(a) and 1416.972(a); *see Naegele v. Barnhart*, 433 F. Supp. 2d 319, 325 (W.D.N.Y. 2006).

does not approach the minimum necessary to invoke the substantial gainful employment presumption.

Based upon the foregoing and a careful examination of the record, I am unable to conclude that the ALJ's finding of substantial gainful activity is supported by substantial evidence.[15]  Because the ALJ went on to examine the applicability of the remaining portions of the controlling test and, as an alternative basis for finding no disability, concluded that plaintiff retains the RFC to perform her past relevant work, it is therefore possible that notwithstanding this finding the agency's determination could be upheld.

    2.   Obesity

In support of her challenge to the ALJ's finding of no disability, plaintiff maintains that when evaluating her RFC the ALJ failed to take into consideration the limitations presented by her diagnosed obesity.  In making that argument, plaintiff places heavy reliance upon Social Security Ruling ("SSR") 02-1p, which addresses obesity and its impact upon a claimant's ability to perform work functions.

When considering whether a claimant's impairment meets or equals

_____

[15]    In his brief, the Commissioner does not vigorously defend the ALJ's finding of substantial gainful activity.

one or more of the conditions listed in the regulations, that person's

obesity and its effects in combination with musculoskeletal impairments

must be considered, in the context of the specifics of the claimant's

circumstances.[16]  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(Q); *see*

*also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d 193, 199 (W.D.N.Y.

2005).  As the regulations observe,

> [o]besity is a medically determinable impairment
> that is often associated with disturbance of the
> musculoskeletal system, and disturbance of this
> system can be a major cause of disability in
> individuals with obesity.  The combined effects of
> obesity with musculoskeletal impairments can be
> greater than the effects of each of the impairments
> considered separately.  Therefore, when
> determining whether an individual with obesity has
> a listing-level impairment or combination of
> impairments, and when assessing a claim at other
> steps of the sequential evaluation process,
> including when assessing an individual's residual
> functional capacity, adjudicators must consider any
> additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

Undeniably, plaintiff's medical records confirm a history of obesity

and of documented concerns by medical professionals regarding plaintiff's

---

[16]     Obesity in and of itself was eliminated as a listed disability in October of
1999.  *See* Social Security Ruling 00-3p.  Its description as a potential contributing
factor is now referenced in section 1.00(Q) of the listings.

weight and the need to aggressively address that condition.  *See, e.g.,* AT

112, 116, 151.  The mere presence of a disease or impairment alone,

however, is insufficient to establish disability; instead, it is the impact of

the disease, and in particular any limitations which it may impose upon the

ability to perform basic work functions, that is pivotal to the disability

inquiry.  *See Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir. 1980);

*Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

In this instance the plaintiff's medical records fail to establish any

work-related limitations associated with her obesity.  In May of 2001, for

example, one of plaintiff's treating physicians, Dr. Jeffrey Olenick,

described plaintiff as "massively obese" but added that she is in no

distress.  AT 112.  While it is true that in June of 2004 plaintiff reported the

existence of joint pain attributed to degenerative joint disease and related

to her weight, there is no evidence of any x-rays, magnetic resonance

imaging ("MRI") testing or other efforts to confirm or discount the diagnosis

of joint disease.  AT 151.

The sole medical record cited by the plaintiff in support of her

obesity argument is a report of an examination by Dr. Keenan conducted

on June 3, 2004.  *See* AT 151.  While in that report Dr. Keenan did

observe that plaintiff is obese, describing that as her "main problem" and noting that she does not regularly exercise, Dr. Keenan also wrote that aside from potential mental health problems "she at this time does not appear to have any other disability, specifically physically related." *Id.* Dr. Keenan also recorded in his report of that examination that the plaintiff was able to get on and off of the examination table without difficulty, and could ambulate without assistance despite her weight. *Id.*

Any claim that plaintiff's obesity poses limitations on her ability to work is also belied by her work history as well as her regular non-work activities. Plaintiff has worked over time, notwithstanding that condition, in various settings, including at the Bon Ton, Wendy's, Wal-Mart, in a telecom position and, most recently, in an Express Mart where her job requirements include operating a cash register, cleaning, and making pizza. AT 173, 174, 179. Plaintiff is able to cook and do laundry, and to dress, bathe and groom herself, and when moving from Oregon to New York drove herself across the country to be near her husband. AT 172-173, 175-76. Based upon these factors, I find that the ALJ's conclusion that plaintiff's obesity does not serve as an impediment to her performance of basic work activities is well-supported by substantial

evidence in the record.

> 3. RFC Finding

In her appeal, plaintiff challenges the ALJ's RFC determination, and in particular the ALJ's failure to find the existence of limitations resulting from her diagnosed mental conditions.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is

-26-

capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance the physical component of the ALJ's RFC finding is not particularly controversial.  The ALJ's conclusion that plaintiff does not experience any physical limitations in connection with the performance of basic work activities is well-supported by substantial evidence in the record.   Despite plaintiff's protestations to the contrary, there is no credible evidence in the record from any medical source that plaintiff's conditions, including principally her obesity and IBS, impose any physical limitation upon her ability to perform work-related functions.

The ALJ's findings regarding plaintiff's mental conditions and the resulting limitations are more troublesome.  When there is evidence of a mental impairment which allegedly prevents a claimant from working, the

Commissioner must follow a special procedure at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The Commissioner must first record the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in the record. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If a mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). In doing so the Commissioner rates the degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, the latter of which is incompatible with the ability to do work-like functions – analyzing four specific factors, including 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

The Commissioner must then determine the severity of the mental impairment. *Id.* §§ 404.1520a(d), 416.920a(d)(2). Where the Commissioner rates the degree of limitation in the first three functional areas as "none" or "mild", and "none" in the fourth functional area, the

-28-

Commissioner will generally conclude that claimant's impairment is not severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If, on the other hand, the Commissioner finds the claimant's medical impairment to be severe, he must determine whether it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  In the event the impairment is deemed severe, but does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC, considering whether he or she is limited in the ability to carry out certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

While at one time a requirement under the governing regulations, an ALJ is no longer obligated to append a psychiatric review technique form to his or her decision when addressing a case when a psychological impairment is implicated.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL 1173632, at *50758.  The ALJ is, however,

nonetheless subject to the requirement that an analysis of whether a

mental impairment exists be incorporated or in some way embodied within

his or her decision when evidence of such an impairment is presented.  20

C.F.R. §§ 404.1520a. To trigger these requirements, a claimant bears the

initial responsibility of providing medical evidence sufficient to indicate the

existence of a potentially limiting mental impairment.  *Howell v. Sullivan*,

950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508,

404.1514).

        In this instance the ALJ's discussion of plaintiff's mental condition is

remarkably brief.  Despite acknowledging the existence of potentially

significant mental impairments, including PTSD and depression, *see* AT

28, the ALJ discounts recent medical evidence suggesting the existence

of limitations associated with those conditions and goes on to conclude

that aside from that disregarded evidence, the record is lacking in clinical

or diagnostic findings reflecting significant limitations in the plaintiff's

abilities in the relevant areas.  AT 29.  In addition to disregarding the

recent evidence in the record, the ALJ's determination in this regard

overlooks findings from the agency's examining consultant, Dr. Kristen

Barry, Ph.D., in which she noted that the plaintiff exhibits fair to poor

-30-

judgment, and has difficulty handling stressors.  AT 122.  Based upon her examination, Dr. Barry concluded that plaintiff is in need of psychological and psychiatric treatment and noted her prognosis as "guarded".  *Id.*

Also not mentioned in the ALJ's determination is a psychiatric review technique form completed by Dr. Apacible in November of 2002, reflecting a moderate limitation in plaintiff's ability to maintain social functioning and mild limitations in living and maintaining concentration, persistence or pace.  AT 134.  Those findings are echoed in a mental RFC assessment form completed on that same occasion by Dr. Apacible, finding plaintiff to have moderate limitations in seven areas of functioning, including maintaining regular attendance and completing a normal work day or work week.  AT 138-41.

The most significant piece of evidence in the record bearing upon plaintiff's mental limitations is a report prepared in June of 2004 by plaintiff's therapist, Denise Pearsall CSW-R and co-signed by Dr. Kahn, of the Cayuga Community Mental Health Center.  AT 152-57.  In addition to recording a GAF of between 55 and 60, reflecting the existence of at least moderate limitations, that report reveals that the plaintiff is seriously limited in several areas including working in coordination or proximity to

-31-

others without being unduly distracted, accepting and responding

appropriately to criticism, getting along with co-workers, responding

appropriately to changes in routine, and dealing with normal work stress.

AT 154.  These findings are not discussed or apparently considered by the

ALJ in his decision, which instead asserts that the record is devoid of

clinical and diagnostic findings showing limitations in such areas.  *See* AT

29.

Clearly there is conflicting evidence in the record, including

indicators beyond the fact that she has worked over time in various

positions, suggesting that plaintiff's mental impairment does not preclude

her ability to work.  While the plaintiff suggests that she has a history of

suicidal ideation, the record belies that claim, and she has never had

psychiatric hospitalization or significant medication management.  AT 119,

140, 141, 145.  Plaintiff has also denied to health care professionals

wanting to harm herself.  AT 145, 146, 149.  While plaintiff was prescribed

Abilify immediately prior to the hearing, the basis for the prescription of

that anti-psychotic medication is unclear since there is no evidence in the

record of any diagnoses of schizophrenia or bipolar disorder, nor have any

prior mental status examinations in the record revealed the presence of

psychotic symptoms.  *See, e.g.,* AT 120-21, 146, 149.

It should also be noted that in October of 2002, plaintiff denied the existence of any hallucinations, delusions or paranoia, and a mental examination performed at that time confirmed the absence of such hallucinations or delusions.  AT 120-21.  Similarly, a June 2004 mental status examination revealed the lack of any evidence of hallucinations.  AT 149.  Although plaintiff alleges disabling depression and PTSD since an onset date attributed by her to September of 2001, notably, she did not seek psychiatric treatment from any competent medical source until March of 2004, and then only at the direction of her counsel.  AT 117-19, 140, 142.

The ALJ's finding regarding plaintiff's mental condition is also potentially confirmed by some of the findings of Dr. Apacible, State Agency Consultant, who in November of 2002 concluded that the plaintiff possesses only mild limitations in performing her activities of daily living.  AT 134.  A finding by such a state agency medical consultant can constitute substantial evidence to support an ALJ's finding.  *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

Portions of Dr. Barry's report are also supportive of the ALJ's decision.  In the report of her consultative examination, Dr. Barry observed that by her own account plaintiff is able to engage in activities of daily living, therefore supporting the conclusion that she does not possess a significant limitation in that area.  *See* AT 122.  Similarly, Dr. Barry's October, 2002 examination, moreover, revealed that plaintiff's attention and concentration, as well as recent and remote memory, are intact and that she is able to maintain attention and concentration.[17]  AT 121-22.  Dr.

In the area of social functioning, the record similarly reveals the lack of any significant limitation.  While Dr. Apacible did conclude that plaintiff is moderately limited in her ability to maintain social functioning, *see* AT 134, plaintiff arrived at her appointment with Dr. Barry on time, appropriately dressed and groomed.  AT 119, 121.  Plaintiff apparently was able to remain seated throughout the examination and maintained appropriate eye contact, AT 121*,* and is able to use public transportation and to drive, AT 119, 122, 175-76.  Plaintiff states, moreover, that she enjoys "hang[ing] out with friends", AT 144, and reported in May of 2004 that she liked her new job as well as her supervisor and co-worker.  AT

---

[17]     Dr. Apacible has also opined that plaintiff possesses only mild limitations in this area.  AT 134.

150.

In the face of this potentially conflicting evidence regarding plaintiff's mental condition, the ALJ's determination fails to include any meaningful analysis of the record, addressing the specific areas of activities of daily living, social functioning, concentration, persistence and pace, and deterioration and decompensation at work or work-like settings, as required by the regulations.  *See Dudelson v. Barnhart*, No. 03 Civ. 7734, 2006 WL 156474, at *4-5 (S.D.N.Y. Jan. 18, 2006); *Batista v. Chater*, 972 F. Supp. 211, 218-20 (S.D.N.Y. 1997).  The ALJ's discussion of plaintiff's mental condition is limited to one paragraph, in which he concisely states:

> Aside from the most recent medical evidence, there is no competent medical evidence evincing a longstanding disabling mental impairment relating to the claimant's alleged onset date of disability of September 28, 2001.  Absent clinical and diagnostic findings showing significant limitations in the claimant's ability to understand, remember and carry out simple job instructions, respond to supervisors, co-workers and usual work situations, deal with changes in a routine work setting and maintain attention and concentration, symptoms by themselves are insufficient to show that she would be unable to meet the quality, attendance and production standards of competitive employment for 12 consecutive months from the date of the alleged onset (SSRs 96-3p and 96-4p).

AT 29.

A proper analysis of the record may well result in a finding that upon

consideration of these factors, plaintiff does not lack the RFC to perform her past relevant work.  Such a finding certainly draws considerable support from the record, and the fact of plaintiff's conservative and sporadic efforts to obtain counseling and treatment for her mental conditions.  *See Batista v. Comm'r of Soc. Sec.*, 2004 WL 2700104, at *9 (S.D.N.Y. Nov. 23, 2004) (concluding that ALJ's decision was based on substantial evidence, where, *inter alia*, plaintiff's claim that she ceased working due to medical conditions was not supported by the limited and sporadic nature of her medical treatment).  Nonetheless, in light of the ALJ's failure to include in his decision the specifics necessary to permit meaningful review of his decision for the purpose of determining whether his findings garner the support of substantial evidence, I recommend that the Commissioner's determination be vacated and the matter remanded for further, proper consideration.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

In concluding that the plaintiff in this case is not disabled, ALJ Tyminski relied on alternative grounds, concluding both that plaintiff has engaged in substantial gainful activity since the alleged onset of her disability, and that she retains the RFC to perform her past relevant work.

-36-

Addressing first the finding, to the effect that the plaintiff has engaged in substantial gainful activity, I conclude that substantial evidence is lacking based upon the lack of sufficient information in the record to permit a determination of whether plaintiff's earnings met or exceeded the threshold provided by regulation as presumptively constituting substantial gainful employment.  Turning to the agency's findings regarding plaintiff's RFC, I conclude that the ALJ did not properly analyze her mental condition in accordance with the detailed procedures outlined in the regulations, failing to address the specific areas of functioning required to be analyzed in order to determine the plaintiff's  RFC.  And, since the RFC finding serves as the lynchpin for the ALJ's conclusion that plaintiff is able to return to her past relevant work, his determination of no disability cannot withstand judicial scrutiny.  Accordingly, it is hereby

RECOMMENDED that the plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability VACATED, and the matter REMANDED to the agency for further proceedings consistent with this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,*

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the clerk of the court serve a copy

of this report and recommendation upon the parties in accordance with

this court's local rules.


Dated:      September 6, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge